## McFarland *vs.* Crary and McLean.

*Double costs* awarded to an officer in a suit against him for acts done in the discharge of the duties of his office belong to the *party*, and not to the *attorney* who conducted the defence.

Where *an officer* is sued for acts done by him, if the party in the process under which the acts are done *indemnifies* the officer, and *assumes the defence* of the suit, *he*, and *not the officer*, is entitled to the *double costs*, in case judgment passes against the plaintiff in the suit.

In the court for the correction of errors a judgment of affirmance or reversal is effective, if at least *ten* members concur in the decision, provided that *nineteen* members are present when the decision is made, although the remaining nine members do not vote in the decision of the question, and have not even heard the argument of the cause.

Error from the supreme court. McFarland, a deputy of the sheriff of the county of Washington, was sued in two actions for acts done by him in his character as a deputy sheriff, under an execution in favor of M. Billings. The plaintiff in the execution agreed to *indemnify* the deputy, and *retained* Messrs. Crary and McLean, attornies of the supreme court, to defend the suits. In one of the suits judgment as in case of nonsuit was obtained, and in the other the plaintiff was nonsuited on the trial. The attornies taxed *double costs* against the plaintiffs in those suits, amounting in the two suits to $379,05, which were paid to and received by *McLean*, one of the attornies. McFarland demanded of McLean, that all the costs received over and above *single costs* should be paid to him. McLean refused to comply with the demand, denying his liability for any thing except the disbursements, which he had already paid to Billings. The jury, under a charge from the presiding judge, that the plaintiff was not entitled to recover, found a verdict for the defendants. The plaintiff excepted, and applied to the supreme court for a new trial, who refused the same, and gave judgment for the defendants. See 8 *Cowen*, 253. The plaintiff sued out a writ of error.

*J. L. Wendell & D. Russell*, for plaintiff in error. The attornies were legally entitled to but *single costs*; all beyond

belonged to their client. As between them the question of *double* costs cannot arise. By the fee bill, attornies can demand only single costs ; if they take more they violate the statute ; and if they cannot *take* they cannot *retain* more than single costs, when the money is paid to them. Suppose the costs had been paid to the client instead of the attornies, could they have recovered *double costs* of him ; or suppose the plaintiffs in the suits had been irresponsible, could they have recovered *double costs* of their client ? The principle of the decision in *Scott* v. *Elmendorf*, 12 *Johns. R.* 315,. that the costs taxable in the cause are the rule of the attornies' compensation, though correct in that case, with all due respect, is supposed to be inapplicable here. There the attorney sought to subject his client to the payment of an amount *beyond* the taxed bill,. and he was not permitted to recover, on the presumption that he had assumed the charge of the suit with reference to the *taxed bill* as the standard of compensation ; thus the court *limited* his demand. Here the attornies not only claim the ordinary costs allowed by the fee bill, but demand *double* the amount. To allow the claim would be to adopt a principle directly the reverse of that which governed in *Scott* v. *Elmendorf;* for although *nominally*, the taxed bill is demanded, *virtually* double the amount allowed by law for such services is asked. An attorney is entitled only to a remuneration for his services, as regulated by the fee bill ;. the circumstance of his client recovering *double* costs, gives him no greater or better right to demand *double* the usual rate of compensation, than what belongs to the jurors, the witnesses and the officers of the court ; if the claim of the attorney is well founded, that of the others cannot be resisted. Besides, to adopt the principle throughout, that ' the costs taxable in the. cause' are the rule of the attornies' compensation, would frequently operate unjustly ; as for instance, when a trifling verdict is found for the plaintiff in an action where no more costs than damages are recovered, an attorney would, in such case, recover perhaps only five dollars, when according to the fee bill, he might demand perhaps ten times that amount. ·*Double costs* are given to officers as an indemnity for the

trouble and expense incurred in defending suits to which they are exposed from their official stations, and to punish parties for groundless provocations of public officers. In the words of the statute, they are given for the *wrongful vexation* of the officer, 1 *R. L.* 155; so it is also said they are given for a supposed oppression of the officer, 5 *Taunton*, 820; but whatever be the reason, when given, they belong to the *officer*, and not to the *attorney*.

The action was properly brought in the name of McFarland; he, and not Billings, was entitled to the double costs; he was the *party* to the record, and the costs were adjudged to *him;* not only *nominally*, but in *fact* was he the party; for if the plaintiffs in the suits against him had prevailed, and his indemnity had proved fruitless, *he* would have been the sufferer. No claim either legal or equitable accrued to Billings, to demand the double costs, by reason of his engagement to indemnify the officer, and his subsequent retainer of the attornies; there was no assignment to Billings of the right to double costs—no *actual agreement* that he should receive them, and none can be *implied* from the circumstances of the case. They belong to the officer, and without an express agreement, he cannot be divested of them; nay, it well may be doubted whether it would not be an abuse of power in the officer to transfer the right to double costs to a party litigant. In the retainer of the attornies, Billings acted as the *agent* of McFarland; and although upon principles of equity, McFarland, would have been bound to pay over to him the *single costs,* in case the costs had been paid to him instead of being paid to the attornies, McFarland could not have been compelled to pay over the double costs, because, in or dinary cases, single costs would have been all that could have been recovered by Billings; and the circumstance of his having undertaken the defence of suits brought against an officer, gave him no greater rights. But if Billings is entitled to the costs, the suit may well be considered as prosecuted in the name of McFarland, as his trustee, and for his benefit. 1 *Chitty's Pl.* 4. Why should the attornies be permitted to interpose the objection that the suit should be in the

name of Billings? If they have doubts as to the person to whom the costs belong, let them file their bill of interpleader.

*S. Stevens*, for the defendants in error. The taxable costs in a cause, although nominally awarded to the party, belong to the attorney, and his lien upon them will be protected. 3 *Caines*, 165. 15 *Johns. R.* 405. Double costs are given to public officers sued for acts done in their official capacities, on account of the increased difficulty in making such defences, and the extra labor imposed on the attorney in conducting them; and the question resolves itself into the inquiry, is the attorney entitled to the costs awarded to his client and recovered of his adversary for the additional labor of the attorney, or do they go to the party? The rule adopted in *Scott* v. *Elmendorf*, 12 *Johns. R.* 315, sanctioned by the supreme court in this case, is the only true rule, except, perhaps, where nominal damages are awarded to the plaintiff, and where no greater costs than damages are given; in such case it would be inequitable that the attorney should be deprived of a just compensation by reason of, perhaps, the bad character of the plaintiff in an action of slander. Until this action was brought it was never questioned that the costs taxed in a cause, whether double or single, belonged to the attorney. On the affirmance of a judgment after a writ of error, where double costs are awarded, they always go to the attorney.

If the attornies are responsible for the excess beyond single costs, they are not liable to the plaintiff in error; between him and them the relation of attorney and client never existed; they were retained by Billings, the party in the execution, who indemnified the officer, conducted the defence of the suits, and made the necessary disbursements, and to whom such disbursements were repaid by the attornies. Billings, instead of being the *agent*, was the *principal*; and although McFarland was the party on the record, he was so but *nominally*; Billings being the *real* party, and in this, as in all similar cases, the law regards the *real*, and not the *nominal*

party. It cannot be urged that the security which McFarland had taken for his indemnity might have proved insufficient. When a bond of indemnity is taken, the law presumes that the party will not be damnified. *7 Cowen,* 358. Having required an indemnity, he can look to it alone, and having entrusted the defence of the suits to Billings, he could not even have sued the attornies, had they mismanaged the causes, and wrongfully suffered the plaintiffs to recover.

It cannot avail the plaintiff in error to urge that the suit was prosecuted in his name for the benefit of Billings, as Billings, in an action in his own name, might have shewn that McFarland was a mere nominal party, and under the count for money had and received, would have been entitled to recover. *2 Comyn on Contracts,* 3, 4. *2 T. R.* 366. *19 Johns. R.* 112. *id.* 428. An action for money had and received can be maintained only in the name of him to whom the money belongs; and in this case, in *equity* and *good conscience it* belonged to Billings; having incurred all the hazard, he was entitled to all the benefits of the defence.

The action was misconceived; it should have been against McLean alone. A suit will not lie against an attorney for money received, until after demand, *5 Cowen,* 376; and a demand was made only of McLean. Again, if the money was wrongfully detained, McLean alone is responsible. It is extortion for an officer of a court of justice unlawfully to take money which is not his due, or more than his due. *Co. Lit.* 368, *b. 2 Inst.* 210. *4 Comyn's Dig.* 264, *tit. Extortion.* The offence consisting in the *taking,* and the money having been received by McLean alone, his partner in business, Crary, was not liable. To subject both to the offence, both must be actors. *1 Esp. R.* 361.

In *reply,* it was said that a *demand* of one of a firm, who are jointly responsible for the payment of money, is as good as if made of both partners; and that the doctrine in relation to *extortion* was inapplicable, as the attornies were sued for not *paying over* money received by them, and not for *taking* money by extortion.

The following opinions were delivered :

By Mr. Senator BEARDSLEY.   I have come to the con-
clusion that this judgment must be affirmed, although for rea-
sons different from those assigned by the supreme court.

There is no weight in the objection that an action should
have been brought against M'Lean alone.   He and Crary
were partners, and for monies received by one, the copart-
ners were liable.

The statute giving double costs to sheriffs, coroners, justi-
ces, constables, overseers of the poor, &c. was intended as a
protection to the several officers whose duties rendered them
peculiarly liable to be subjected to suits.   1 *R. L.* 155.   It
therefore had two objects in view : one was in a measure to
compensate the party who should be harrassed without cause,
and the other was to deter the bringing of frivolous causes
against officers by subjecting the plaintiff to double costs.   5
*Taunton,* 820.

I feel a perfect conviction that the legislature never in-
tended to give these double costs to the attorney.   He runs
no risque, nor is he subjected to additional labor or respon-
sibility in defending a suit brought against an officer.   Sin-
gle costs under the fee bill, are considered a fair compensa-
tion for his services as attorney.   Why, then, should he re-
ceive double costs ?   The supreme court say : " The correct
rule undoubtedly is, that the costs taxable in the cause are
the rule of the attorney's compensation ;" and further, that
" the other officers of the court are entitled to the same rule
of compensation :" thus doubly remunerating the officers for
their services, while the party litigating, who runs all the
risque, obtains no part of the additional fees.   It is supposed
by the supreme court that the case of *Scott* v. *Elmendorf*
sanctions this doctrine.   12 *Johns. R.* 315.   There the plain-
tiff had commenced a suit in the supreme court to recover a
note of about $50, and on failing to recover, sued his client
for his fees, and charged supreme court costs.   The court
decided that the attorney was entitled to common pleas costs
only, because the statute would have given but common pleas
costs had judgment been recovered on the note, it being for

less than $250. It appears to me that this case does not bear out the court in the principle decided in the present cause. Suppose the taxable costs could not have been recovered from the plaintiffs in the suit, could Crary and McLean have recovered double costs against McFarland? It would seem so, if the " taxable costs are the rule of compensation to the attorney ;" and if so, the law giving double costs would be an oppression upon the officer, instead of a protection, as it would subject him to double costs, when, if sued as a private individual, he would pay single costs only. In an action in the supreme court for slander, where the plaintiff recovers a verdict of six cents, and is consequently entitled to tax only six cents costs, can it be contended that the attorney must be confined to this standard of compensation? I presume it will not be pretended. The opinion expressed, that all the officers of the court would be entitled to the same rule of compensation, appears to me to be untenable. Take, for instance, the clerk : he has a right to require his fees paid in advance. Is he to exact 12 cents for filing a plea for a sheriff, (double costs,) or may he, after receiving 6 cents in the first instance, on the sheriff succeeding in his defence, call on him or his attorney for the other 6 cents? The same quere would be applicable to witnesses, jurors, &c.

Although the attorney is not entitled to double costs, still I think this action cannot be sustained. McFarland required an indemnity from Billings, the judgment creditor, before he would proceed. Billings gave him a satisfactory indemnity, and on suits being commenced against McFarland, Billings retained Crary and McLean to defend them. McFarland, then, ran no risque, as he had taken satisfactory indemnity ; he was not bound to employ attornies or counsel, and the case rebuts the idea that he did employ Crary and McLean, as it is expressly stated that Billings employed them. It does not appear that McFarland ever took any part in the defence, and he was not bound to do so ; all that could be required of him was to give Billings notice of the suit, and if he neglected to defend, he was bound to indemnify McFarland. What, claim, then, has McFarland for the

costs? I can perceive none; and if Crary and McLean had paid them to him, Billings could recover them from him. Billings was the party litigating; he ran the risque and defrayed all expenses; the costs, therefore, belonged to him. Crary and McLean had paid certain disbursements to Billings. Now if McFarland had a right to recover any part, he had a right to the whole. The relation of client and attorney never, in point of fact, existed between McFarland and Crary and McLean. They could not have resorted to him for their fees, because he had not retained them; and for the same reason, he could not have maintained an action against them for not defending the suits. The supreme court considered the giving receipts by Crary and McLean, in which they described themselves attornies for the defendant, as evidence of the relationship of attorney and client. The giving the receipts was *prima facie* evidence only; it was subject to explanation. If they had brought a suit on a bond for the assignee, the suit would have been in the name of the obligee; and in filing their warrant of attorney, and in giving receipts for money, they would have described themselves as attornies for the plaintiff. Nothing more was meant in the present case. They were attornies for the defendant; that is, so far as matter of record, they were attornies for McFarland, the party to the record; but, in point of fact, attornies for Billings, the real defendant, on whose retainer alone they acted.

Had Billings brought the suit, he could have maintained it in his own name, and probably he might in the name of McFarland; but it is not brought by Billings, but in hostility to his right; and I think the action for this cause cannot be sustained by McFarland.

By Mr. Senator BENTON. Several questions arise upon the record in this cause, and several points were made upon the argument. Having come to the conclusion, in the examination which I have given the facts and circumstances of the case, that the judgment of the supreme court ought to be affirmed, but not for the reasons assigned in the opinion delivered in that court, it is proper that the reasons for my opinion and conclusion should be stated.

We are in no instance to inquire into facts *dehors* the record. The judgment of this court must be pronounced upon the facts judicially before us. Do the parties, then, stand in such a relation to each other as to allow the plaintiff to maintain an *indebitatus assumpsit* against the defendants, upon the assumption that the defendants have not a right to retain beyond single costs? Promises in law are said to arise when there is no express stipulation between the parties. 2 *Comyn on Contracts,* 6. This is laid down as a general rule. Implied contracts or promises are founded on some legal liability to pay a debt or perform a duty. *idem.* There is no evidence of any express contract of retainer between the plaintiff and defendants; nor does it appear that the plaintiff has ever recognized them as his attornies, or done any act shewing that fact, except commencing this suit. The plaintiff, as was his undoubted right, looked to his indemnity from Billings. We are to intend nothing against its validity or competency; he was satisfied with it. The defendants were retained by Billings, and would have been liable to him for any neglect or palpable breach of duty in conducting those suits. In case judgment had passed against him, the plaintiff would have resorted to his indemnity, and after recovering upon that, he could turn round and prosecute the defendants, if they had mismanaged the suits, and recover also against them, unless they were permitted to deny the relationship of attorney and client. In this state of the case, the plaintiff would pocket the sums received on both recoveries, and Billings would have been without any remedy, unless he is to be viewed in some other light than as an agent in all or any of these transactions. If the suit had resulted adversely upon a trial on the merits, the plaintiff would have resorted to his indemnity, and the attornies would have had recourse to the retainer for their compensation.

The plaintiff, before he made himself liable by any act as an officer, undoubtedly calculated upon the contingencies of death and insolvency, and made provision against both. We are not, I think, to presume he did not. It was his right, his interest and his duty to do so; and if he neglected it, he alone is chargeable with the fault. All the advances for dis-

bursements in the progress of the suit were made by Billings, and were reimbursed to him by McLean ; and it is not perceived in what respect the plaintiff, resting upon his indemnity, was under any obligation to make any advances whatever. How are the defendants to protect themselves in the payments made to Billings, unless they can resort to the contract of retainer by him? Clearly they are not entitled to keep the money ; it belongs not to them ; but if recovered again from them in this suit, in case of Billing's insolvency, or death and insolvency together, what remedy have the defendants? None, I apprehend ; and still the plaintiff will have pocketed a sum of money to which he has no claim in justice and equity. Billings' contract with the defendants was not for the benefit of the plaintiff, but of himself; and being the only person who was peculiarly interested in the result of the litigation, he ought, in my judgment, to be considered in some other light or character than that of an agent of either the plaintiff or the defendants. Suppose the plaintiff had insisted upon employing some individual to defend the suits in whom Billings had no confidence, and against whom he had reasonable grounds of objection ; would McFarland have been permitted to do so, and still hold his indemnity as good and available to him? I do not perceive that the defendants were under any legal liability to perform any duty by a neglect of which the plaintiff could sustain an action against them if he had been damnified. In this, as in all other cases of the like character and involving similar principles, the party is bound to resort to his express contract.

Although, for certain purposes, an attorney is deemed the agent merely of a party to a suit, yet, for his own protection and the preservation of his rights, and the protection of his interest as an officer of the court, bound by his duty and oath of office to perform certain acts, he is deemed an assignee or *quasi principal.* In the case of *Martin* v. *Hawks,* 15 *Johns. R.* 405, this doctrine received a pretty full discussion in the supreme court ; and the principles there settled are deemed to have a bearing upon the question presented in this case. Martin had recovered a judgment against one Robinson of 77,44 all of which sum, except six cents damages, was for costs of

ALBANY,
Dec. 1830.

McFarland
v.
Crary.

the suit. A *ca. sa.* was issued, on which Robinson was arrested by Hawks, who voluntarily suffered him to escape. Martin, by a release dated previous to the arrest, discharged the sheriff in the original suit, and directed him to proceed no further with the *ca. sa.*, but to return the same satisfied, as he had received the debt and costs in full. The action was debt for an escape; the plea *nil debet*, with notice of release from Martin. On the trial, the plaintiff's counsel offered to prove that the judgment against Robinson, excepting six cents, was due to the plaintiff's attorney in the original suit as taxable costs; that when the *ca. sa.* was delivered, this fact was stated, and the officer required to pay the amount, when collected, to the attorney, and not to the plaintiff; that upon the arrest, the officer permitted Robinson to go at large, on his promising to pay the money in a few days; and that Robinson had been required to pay the amount of the judgment to the attorney, and not to the plaintiff. Other facts were offered to be proved, but as they form not the grounds of the decision which apply to this case, they are not noticed. The judge nonsuited the plaintiff; a motion to set aside the nonsuit was made and granted; the supreme court holding that the sheriff could not avail himself of the release from the original plaintiff; it having been executed with notice of the attorney's lien, it was a fraud upon him; that the attorney had a lien upon the judgment recovered for his costs, and no payment could be made to the plaintiff, after notice, so as to discharge and exonerate the defendant from his liability to the attorney. It was supposed in this case that the attorney stood in the situation of assignee, and that Martin was to be regarded as the mere trustee for him for the amount of the judgment, and authorities were cited to shew such was the rule in England. Now the rule to be extracted from this decision, in my judgment, establishes the following positions adverse to the plaintiff's right to recover in this suit : The defendants had a lien upon the judgments recovered against the plaintiffs in the suits against the officer, which must have been satisfied previous to any other existing claim, their equities being paramount, and no set off existing between the parties to those suits. The defendants being rightfully pos-

sessed of the fruits of those litigations as attornies on record, in virtue of their contract with Billings, are entitled to hold so much as legally belongs to them, and are bound to hold the residue for the person who has the best right. If the defendants are to be regarded as assignees so far as to protect themselves, they stand so, I think, in this case, in regard to the whole amount of the recoveries, and the money must in the first instance be paid to them; and if they have received more than they are entitled to keep, it cannot, I think, be recovered of them by one who shows no contract, or to whom they owe no duty, or to whom they are under no legal liability. The plaintiff is clearly not entitled to the money paid for disbursements, and could not sustain an action against any one to recover it. That certainly was not money had and received to his use, so far at least as respects the amount actually paid out.

This suit is brought by the plaintiff for his own benefit, and not for the benefit of Billings; McFarland, not Billings, made the demand. The contract having been made between the defendants and Billings, who relied in making it upon his indemnity to the plaintiff, he entered into such stipulations with his attornies and counsel as the nature and importance of the controversy demanded of him. It was, in my judgment, competent for the officer to make any conditions he might deem advisable in regard to the fruits of the controversy; he might waive all claim to the double costs, if he supposed himself entitled to them upon a recovery, to the creditor who indemnified him. But this matter in no respect enters into the decision of this question.

In the consideration I have given this cause, I have purposely omitted the expression of any opinion in regard to the remedies the plaintiff may pursue, and have confined myself to the single point of inquiry above stated; and being of opinion that the plaintiff cannot maintain an *indebitatus assumpsit* against the defendants for money had and received to his use, I shall vote for an affirmance of the judgment of the supreme court, with costs.

By Mr. Senator Tallmadge. The first question that naturally presents itself, is whether the attorney or the client is entitled to the *double costs;* and next, who is to be considered the client in the present case. It is urged, on behalf of the plaintiff, that the double costs are given to the party, instead of the attorney, as a compensation for a supposed oppression committed by the original plaintiff in bringing the action. *Dunbar* v. *Hitchcock,* 5 *Taunt.* 820, is cited in support of this position. That case differs in some respects from the one under consideration. The plaintiff there declared for an assault and battery and false imprisonment for an act done by the defendant, who was his superior officer in a militia regiment, under colour of discipline. The defendant pleaded the general issue, and gave the special matter in evidence under the mutiny act, and obtained a verdict; upon which Mansfield, Ch. J. *certified* to entitle him to treble costs. There was an irregularity in entering up the judgment on which the question in that case arose. The court, in their opinion, say: " It is supposed by the law that the measure of those costs allowed by the officer of the court is a full indemnity for the expenses the defendant has incurred. If an act of parliament says that in certain actions the judge shall *certify,* and the defendant shall have *double* or *treble* costs, it gives a compensation for a supposed oppression committed by the plaintiff in bringing the action." The *certificate* above spoken of may be like the *certificate* required by our statute in certain actions of trespass, where the plaintiff, if he recovers damages, shall be entitled to his full costs, *provided* the court before whom the same shall be pending shall *certify* in their minutes that the trespass appeared to be *wilful and malicious.* 1 *R. L.* 345, § 7. 2 *R. S.* 614, § 12. This provision for a certificate presupposes that such actions may be brought in good faith, and no bad intentions enter into the commission of the trespass. In either case, it cannot for one moment be supposed that the double or treble costs ought to be given, for that proceeds on the ground that the action was brought and the tresspass committed from improper motives. But in an action against a sheriff, the statute gives double costs against the unsuccessful plaintiff in all cases, without regard to the

*ALBANY,*
*Dec. 1830.*

McFarland
v.
Crary.

CASES IN THE COURT OF ERRORS

motive. That they are given as a compensation for a supposed oppression is altogether ideal. Neither, in my judgment, does the law proceed on the ground that a failure of a suit against an officer is evidence of malice on the part of the plaintiff. We are not to intend malice; on the contrary, it is rather presumed not to exist where the law has not provided for a certificate by the court or proper officer, who are best able, from the investigation before them, to judge of its existence. The object of the statute undoubtedly is to deter parties from hasty and ill-advised prosecutions against public officers, and to remunerate those officers in a measure for their trouble and expenses, and, in the language of the act, "wrongful vexation" in defending such suit.

But it is said that the attorney is entitled to receive for his services the amount of costs taxed in favor of the party, whether it be single or double, supreme court or common pleas costs. That the statute awards the double costs to the *party* is, of itself, no objection to this position; for all costs are given to the party; but the attorney is entitled to them, and the court will always protect his rights where he has taken the proper steps to secure them. 3 *Caines' R.* 164. 15 *Johns. R.* 405. In the supreme court, where the recovery is less than $250, the party recovers only common pleas costs against his adversary; but in *Scott* v. *Elmendorf,* 12 *Johns. R.* 315, the attorney claimed that he was entitled to receive of his client the full costs in the supreme court, notwithstanding the recovery only entitled the client to common pleas costs. The court held that the attorney, on the implied *assumpsit* arising from his retainer, was entitled to common pleas costs only. This case is supposed by the defendants' counsel to settle the construction of the act upon which the present suit arises, on the ground that the attorney receives whatever costs are awarded to the party. It is true, that a certain rate of fees is established for the attorney in the supreme court, and a certain other rate in the common pleas; but it by no means follows, because the attorney brings the suit in the supreme court and the recovery only entitles the party to common pleas costs, that he shall receive a higher rate. The statute establishing the fee bill can

ALBANY,
Dec. 1830.

McFarland
v.
Crary.

mean nothing more than that the attorney shall have supreme court costs, when such costs in the suit can, by the recovery, be awarded to the party. It, however, could never have been intended, that where *double* costs are allowed to the party, the attorney should receive *double* the amount which the fee bill allowed him. This principle once admitted would involve the absurdity of giving to the officers of the court, the clerk, sheriff, crier, and to the jurors and witnesses *double* the amount of their fees also. Again; if we adopt the principle that the costs awarded to the party are the criterion of the attorney's costs, the same rule would afford him but a meagre compensation in those cases where the party recovers no more costs than damages; and still it is not perceived why the rule should not apply in the one case as well as in the other.

But it has been said that the practice in such cases is evidence of the received construction of the statute. It is undoubtedly true, that the general practice has been for the attorney to receive and retain the double costs. This practice, however, cannot settle the legal construction which this court is bound to give the act; neither, in my apprehension, has this practice prevailed under any idea of the attorney's legal right to receive them, but has arisen from an arrangement with his client to retain them as an equivalent for counsel fees, which he would be entitled to charge. These actions against public officers are generally litigated with great zeal by the parties. From their very nature they command the first talents of the profession where they originate. This litigation, too, is often protracted by reason of the "law's delay;" and at its termination the counsel employed must be fairly compensated for the services rendered. This cannot be done by the ordinary taxable costs to which the attorney is entitled; they are a scanty remuneration for his labor in the formal part of the proceedings. Hence it is, so far as my information on this subject goes, that the double costs are retained by the attorney, by consent of the client, as a compensation for counsel fees which the client would otherwise pay. That double costs were heretofore awarded only on an issue in fact, and not on an issue in law, 5 *Johns. R.* 182, 9 *id.* 254, is another evidence that they belong to the client,

and not to the attorney. They seem to have been allowed in those cases only, where it may be presumed the officer will be engaged in the preparation of the cause, and are intended for his remuneration. The conclusion therefore is, that the attorney has no legal right to the double costs as against his client.

Before passing to the next point, it may be as well here to remark, that if McFarland can maintain an action for the double costs, he may sustain the present one. It is no objection that McLean alone received the costs. The defendants are partners, and the receipt of this money being within the legitimate scope of the partnership, they are therefore liable as such, if liable at all. *Willet* v. *Chambers, Cowper,* 814. There is no weight in the suggestion of the defendants' counsel, that if any action can be maintained, it must be for money *extorted,* which would not lie against the partners. There is no extortion in the case, nor is any pretended by the plaintiff. Extortion consists in the illegality of receiving the money, and not in the omission to pay it over. It is conceded that McLean rightfully received it, but it is insisted that he wrongfully detained McFarland's part.

The next question is, does the relation of attorney and client exist between Crary and McLean, and McFarland? In other words, who was the real client in the original suit against the deputy sheriff? was it McFarland, the party to the record, or Billings, who indemnified him and assumed the burden and responsibility of the defence of the suit? A client is one who applies to an advocate for counsel and defence ; one who retains the attorney ; is responsible to him for his fees, and to whom the attorney is responsible for the management of the suit. In this view of the case, who retained or employed Crary and McLean to defend the suits? It was contended on the argument, and assumed by the supreme court, that McFarland was the client, the real defendant; and that Crary and McLean were attornies upon the record for him, and that they are estopped from denying that they were his attornies. There is no positive evidence to shew this ; it is mere presumption, from the fact that their names appear on the record and proceedings in the cause as

attornies for the defendant in the suit. On this presumption the attorney on record would always be the attorney of the party, plaintiff or defendant, whether he be a real or nominal party; and on that ground the relation of attorney and client would exist between them. This presumption, however, may always be rebutted by the fact that the party is nominal, or that he is not the client who retained the attorney. The mere fact of their names appearing on the record and of their signing papers and receipts as *attornies for defendant*, cannot control other evidence to the contrary; such things are only formal and are rather matter of practice than otherwise, in the course of legal proceedings. To my mind it would be carrying the doctrine of estoppel to a strange extent if such presumption, the slightest the law can raise, could not be rebutted by positive testimony.

What then is the evidence on this subject? It is contained in the mutual admissions of the parties themselves. It will be observed that the most important facts in the plaintiff's case, and without which he could not move one step, are admitted by the defendants. On the other hand it is admitted Billings was to indemnify McFarland against the suits brought against him by Wilson and Root, *and that he, the said Billings, employed the said defendants to defend the said suits.* While this admission affords the strongest evidence of the employment of Crary and McLean by Billings, it at the same time repels all idea of their employment by McFarland. It seems to have been taken for granted by the supreme court that the employment was by Billings; still it is supposed that does not affect the question, because, say they, McFarland, must have employed an attorney if Billings had not. With due deference to that opinion, it is not perceived how that conjecture, for it is merely conjecture, can or ought to make any difference. The question is one of fact as to the retainer or employment of the attornies, and not what might or might not have been done by McFarland if Billings had not employed them. Suppose McFarland, after Billings had indemnified him against any suits by Wilson and Root, had given him notice of the suits being brought and that he must defend them. If Billings had neglected to defend after such notice, it may well

be doubted, whether McFarland would be under any legal obligation to employ an attorney or to defend at all ; but on judgment passing against him might look to Billings on his indemnity for any damages he might have sustained.

Again ; it is supposed the deputy may have made all the advances in the progress of the suit, and that if his recourse to Billings had failed by reason of Billings' death and insolvency, he could have claimed from the attornies his disbursements. It is a sufficient answer to this, that it does not appear that the deputy did make any such advances, and in the absence of other proof, the presumption is he did not ; because the employment was by Billings; and as between him and the attornies, it was his duty to make them on the ground of his retainer, and as between him and McFarland, it was his duty on the ground of his indemnity. If the indemnity was not sufficient to protect him against any imaginary or contemplated or even actual insolvency of Billings, the fault was his own ; he had it in his power to protect himself against any such casualty by taking an indemnity sufficiently ample. If he failed or neglected to do that, such failure or neglect shall not be permitted to affect the rights of the other parties ; but even if this were material, the presumption of law is that the indemnity is sufficient. In this case nothing appears to the contrary.

The relation of attorney and client may be further tested by the application of well settled principles of law to the case. If a bond be prosecuted for the benefit of an assignee, it must be sued in the name of the original obligee. He becomes a party to the record ; and although a nominal plaintiff, he is liable to costs, if unsuccessful, to the opposite party. The defendant in such case only looks to the party on record. If the plaintiff's name is used without his knowledge or consent, the attorney who thus uses it is liable to him for any damages sustained by reason thereof ; and if with his knowledge and consent, still the attorney would look to his client, the real plaintiff for his costs ; and the real plaintiff would also be responsible for the costs of the opposite party if the prosecution should fail. In such a case the name of the obligee is used merely to answer the forms of law.

McFarland's situation is not unlike that of the obligee, the nominal plaintiff. He may not be considered strictly and technically a nominal party, because, in case of failure in the defence of the suit, he would in the first instance be responsible for the recovery, and would look to his indemnity for reimbursement. Yet as between him and the attornies he stands in no different light. He did not retain the defendants; they were employed by Billings, and the defence of the suit was conducted by them under that employment, with McFarland's knowledge. Suppose Billings had failed in the defence of the suits, to whom would the attornies have looked for their costs? Most assuredly to Billings, who retained them and who was in fact their client. If their action would lie against Billings on his retainer, there would be no pretence of claim against McFarland, who never employed them and who was never known to them in the character of client. Suppose Billings had been insolvent and the attornies had thought proper to make the experiment, for it would have been but an experiment, to recover their costs of McFarland; what would be the first proof necessary on the trial of the cause? They must prove that McFarland retained them as attornies to do the business in question. This might be done by producing his written instructions by letter or otherwise, or by any person who heard him give instructions or admit the retainer. The retainer may also sometimes be inferred from the defendant's acquiescence in the plaintiff's services, or from his voluntarily availing himself of such services. *Saund. Pl. & Ev.* 157, 8. In the case under consideration, there is no proof of a retainer by McFarland either by written or verbal instructions or by his admission; neither can any inference of a retainer on his part be drawn from the facts in the case. On the contrary all inference or presumption is rebutted by the actual retainer by Billings, and by the fact of indemnity of McFarland, by which Billings took the burden of the defence and the responsibility of the suit on himself. McFarland did not in a legal sense acquiesce in the services of the attornies, nor voluntarily avail himself of them. Their defence of the suit was known to him, and so was the retainer of them by Bil-

lings. He was, as far as eventual responsibility was concerned, a disinterested spectator; as much so in that respect as the nominal plaintiff before mentioned. There is no pretence therefore that such a suit could have been sustained.

To test this principle farther, let us see to whom Crary and McLean would be liable for want of skill, negligence or mismanagement in the suit. Suppose for any such cause the defence had failed, could McFarland maintain his action against them for it? His first step on the trial would be to prove his retainer. This might be done by evidence of a direct retainer or from their conduct in the business or from their admission. *Saund. Pl. & Ev.* 165. As to a direct retainer, none is pretended; none can be inferred from their conduct in the business; there is no admission except that of the opposite party, and that proves directly the reverse. Should Billings bring such a suit, he could sustain it by all the above evidence. If he could maintain the action, then certainly the attornies are not also responsible to McFarland. They cannot and ought not to be made to serve two masters.

But it is said Billings was the agent of McFarland. If there is any thing in the case to constitute an agency, McFarland, in my view of the matter, is the agent, and not Billings. Standing as a mere party to the record, indemnified against eventual responsibility, employing no attorney and taking no part in the defence of the suit, he cannot be considered in that light without contravening all well settled notions of principal and agent. As well might we say that the assignee of a bond, the real plaintiff, is the agent of the obligee, the nominal plaintiff in the suit.

In my judgment, enough has been said to shew that the relation of attorney and client existed between the defendants and Billings, and not between them and McFarland. What then are their rights and duties as attornies on the one hand, and the rights and duties of Billings as client, and of McFarland as party to the record, on the other? These are to be ascertained from an examination of the relative situation of the respective parties. It is the duty of the attornies to conduct the defence of the suit in a faithful and diligent

manner, without any lack of skill, and without negligence or mismanagement on their part. That they have done this, the result of the suit sufficiently shew. There is no allegation to the contrary. For those services it is their right to receive a proper remuneration. That remuneration consists in the taxable costs, according to the rate of attornies' fees, as established by the fee bill, and such counsel fees as, from the importance of the subject matter in controversy and the nature of the litigation, may be deemed proper ; but they have no right to the *double* costs as such. The double costs enure to the benefit of the party in interest, or the person who is the actor and assumes the responsibility of the suit. Billings was the plaintiff in the original judgment, on which the execution was issued, and under which the sheriff levied on the property for which the actions of Root and Wilson were brought against him. Whether he was indemnified by Billings before the levy, does not appear ; nor is it material in this case. The sheriff always has it in his power to protect himself from the hazard of such suits. The law makes ample provision for his safety and for his security. If the property is in dispute, he can, by an inquisition, if in favor of the claimant, justify himself in a return of *nulla bona* to the execution, where he acts *bona fide*, and is not bound to proceed and sell without an adequate indemnity from the plaintiff. *Van Cleef* v. *Fleet*, 15 *Johns. R.* 147. In the case before us, Billings gave him that indemnity, and he went on in the performance of his duty the same as if there was no dispute about the property. By that means he was freed from all eventual responsibility. Billings had assumed the whole ; and when the suits were brought, he undertook the defence, employed the attornies, and for aught that appears, incurred the expense and took on himself the labor of preparing the causes for trial, and carried them down to a successful termination. If then, as between Billings and McFarland, and also between the attornies and McFarland, there was no responsibility on the part of McFarland in case of failure, there certainly is no reason for his claims in the present action. Billings, in one sense, stands in McFarland's place. He has assumed all the responsibility, and is entitled to all the bene-

fit to be derived from a successful defence of the suit. It is no answer to say that the action might have been commenced against Billings, and then the statute would have given but single costs. This objection does not lie with McFarland. It is sufficient that the party elected to take his remedy in an action against the sheriff; and Billings having, as it were, by his indemnity, stepped into the sheriff's place, having retained the attornies and assumed the whole burden of the defence, is entitled to all the benefits which the law allows in an unsuccessful prosecution of a public officer. It shall not be permitted to the sheriff, where he has shifted all care and responsibility from his own shoulders, to say, in case of failure, I am not answerable to the attornies, because their services have not been rendered on my retainer; and the costs taxed against me, being a party to the record, are to be paid by Billings, because of his indemnity; and in the event of success, I will come in and claim the double costs which the statute awards to the party in such case. He shall not assume at pleasure these *Protean* shapes. In sportsmen's phrase : " If he is unwilling to share in the perils of the chase, let him not come in to claim the spoils at the death."

From what has been attempted to be shewn, and it is hoped satisfactorily shewn, it will be seen that, as between the attornies and the client, the latter is entitled to the double costs; that Billings is the client in this case, and that it is his right to receive them; that it is also his duty to compensate the defendants for any counsel fees that are properly chargeable under the circumstances of the case. This, it may be fairly inferred, he has done, by permitting them to retain the double costs, except the disbursements, which they have paid over to him. But whether there has been a settlement between the defendants and Billings is immaterial. No one can call on them for the double costs except himself; and it is enough for the present purpose that we hear of no claim or demand or even complaint from Billings.

On the whole, I am in favor of affirming the judgment o the supreme court, but for different reasons than those on which it was rendered.

By Mr. Senator Todd. The plaintiff puts his case upon the ground that, he being the officer who was sued for an official act, and judgment having been rendered in his favor and double costs awarded, he, and not the attorney and other officers of the court, is entitled to all the excess beyond single costs. The act entitled, " An act for more easy pleading in certain cases," 1 R. L. 155, furnishes the only ground for the allowance of double costs. The first section of that act provides, that if any action upon the case, battery or false imprisonment, be brought against any sheriff, coroner, justice of the peace, mayor, recorder or alderman, bailiff, constable, marshal, collector, or overseer of the poor, and their deputies or any of them, or any other person who, in their aid or assistance or by their commandment, do any thing touching his or their office, for or concerning any matter or thing by them or any of them done by virtue of their office, the action shall be laid within the county where the trespass or fact be done and committed, and not elsewhere. It further provides, that if, upon the trial of any such action, the plaintiff shall not prove that the cause of his action arose within the county wherein such action is laid, in every such case, the jury which shall try the same shall find the defendant not guilty, without having regard to any evidence given by the plaintiff touching the cause for which such action is brought. The act further provides, that if the verdict shall pass with the defendant, or the plaintiff become nonsuited or suffer any discontinuance, in every such case, the court in which the action shall be brought shall allow unto the defendant or defendants his or their double costs, which he or they shall have sustained by reason of his or their wrongful vexation in defence of such action.

It does not depend upon doubtful construction what was the intention of the legislature in passing this act ; for it expressly appears that it was intended for the benefit of the officers named therein, undoubtedly supposing that in the variety of duties which they were called upon to perform, some acts might be done which could not be justified, and intending to give to the officer the benefit of all doubtful cases, by awarding double costs against the party who should be unsuc-

ALBANY,
Dec. 1830.

McFarland
v.
Crary.

cessful in a suit which arose from the performance of an official act. Such a penalty would usually prevent a suit which depended upon the balancing of probabilities, unless it was a case where the party was actuated by unworthy motives, and then, in the language of the act, he would be visited with double costs for his wrongful vexation. It is undoubtedly sound policy to extend to an officer that aid which would be denied to an individual, in consideration of the duties which he is called upon to perform, and in which he is deprived of that election which an individual might exercise to avoid the hazard of a lawsuit, or the risk of personal danger. That policy has been exercised in the act to which I have referred, and double costs are there given to the officer as an indemnity for a supposed oppression, and the punishment of the oppressor. Other advantages are extended to the officers named in. this act, which are of much consequence, to wit : the locality which is given to the action, and the exemption from the technicalities of special pleading. It will not, surely, be contended that these advantages can be used or were intended for any others than those upon whom they are conferred. McFarland, the plaintiff, was one of the officers named in the act ; he was sued for an official act ; he succeeded in defending himself ; the statute gave him double costs ; the court awarded double costs to him in the judgments which they rendered in his favor ; those costs have been received by the defendants, and retained by them on the ground that they, as the attornies of McFarland, and not McFarland himself, are entitled to them.

Whenever costs are allowed, they are awarded to the party on the record, and the attorney's right to costs depends upon the fee bill, which fixes the amount which he is entitled to receive for the services therein expressed. If a judgment is paid to the attorney, he may retain the costs which he would be entitled to recover against his client ; but this results from his claim on his client, not from his interest in the judgment. In consideration of the attorney's labor having contributed to produce the costs which are awarded to the party, he is considered as having an equitable claim upon the eventual costs allowed, where he gives notice of his claim

and directs the costs to be paid to him; where such a pre-caution is not exercised, the whole judgment may be prop-erly and legally paid to him in whose favor it is rendered. The expression *double costs* is used here in its literal sense, and is twice the amount of single costs; and the bills of costs in the suits against McFarland are double what they would have been if he had not been a deputy sheriff. We have no statute giving to an attorney double costs for his services; his fees for the same services are uniform in all cases, (I speak of cases where full costs are recovered by the party.) It is difficult for me to discover the reason which gives him twice as much for drawing a plea for a sheriff as he would be entitled to receive if the same service were rendered for a private citizen. The reason does not exist in the difference in the labor necessarily bestowed in the two cases; for that is characterized by perfect equality. If there is a difference in the labor in preparing the same species of defence, wheth-er done for a private citizen or for an officer, the excess of la-bor is in preparing the defence for the citizen—the officer having the advantage of the statute privilege of giving the special matter in evidence under the general issue. It must be a strange mode of reasoning that leads to the conclusion that the privilege given to the officer changes the rights of the attorney from single to double costs. If the double costs had not been collected and paid to the defendants, and they had been compelled to resort to their action to recover a compensation for their services, the measure of damages would have been such fees as the statute prescribes for the various services necessarily performed in the progress of the suit, and the double costs which are allowed to the officer for his vexation, could not have been recovered by them in a suit against their client. It is said that the officer is not en-titled to the double costs, because it costs him no more to de-fend a suit than any other person; neither does it impose upon the attorney any greater duty than to defend another person; he is not, therefore, entitled to it on the ground of services rendered; he is not, because the statute does not give it to him. The officer is entitled to it by the express

terms of the act, and it is immaterial what were the reasons which operated upon the legislature so to award the costs.

It is contended that the taxed bill of costs is the measure of the attorney's compensation. This rule is too general; it will apply in a case in the supreme court, where the recovery is over $250, because the statute gives the attorney the same costs which are taxed. Where the recovery is less than $250, the costs which the party recovers may, or may not be the measure of the attorney's compensation. Beyond this, I apprehend, the rule cannot apply. It cannot apply, for instance, to a case of slander, where the verdict of a jury is twenty dollars; for in such a case the costs cannot exceed the amount of the verdict; whereas the attorney's bill may amount to three times that sum. The attorney's fees are fixed and certain, and not dependant upon the uncertain determination of the controversy.

The case of *Scott* v. *Elmendorf,* 12 *Johns. Rep.* 315, lays down the rule that the attorney can recover no more from the client than the latter recovers from his adversary. As applicable to the case then under consideration, the rule was undoubtedly correctly laid down. The decision was placed upon the ground of the presumption that the attorney was to receive no more than the taxed costs, as there was no evidence of an agreement to pay more. This presumption is indulged for the protection of the interest of the client; but it is a presumption which may be repelled. If a party elects to have his suit commenced in the supreme court, and retains his attorney to attend to the cause in that court, the taxed bill of costs which the party might recover would not be the extent of the attorney's compensation, but the fee bill regulating the compensation of the attorney in the court in which the services were rendered. The case of *Scott* v. *Elmendorf* does not furnish a precedent for the defence of this action.

If the attornies are entitled to double costs, all the other officers are also entitled to them. This is the rule laid down by the court below. I cannot assent to this position; but it necessarily follows if the first is correct. Can it be true that the jurors are to be rewarded by double pay if they find

a verdict in favor of an officer, and only half the sum if the verdict is against him? This would be bidding a reward for a verdict of acquittal, which would illy comport with that purity which should characterize all judicial proceedings. The witnesses too, exposed to the operation of the same influence, must be strong in honesty to overcome the interest they have in the suit. The jurors and witnesses and clerk, and all the officers are united by the same pecuniary consideration to aid in the acquittal of a persecuted officer, if this position be correct. But give the double costs to the party to whom the statute has given them, and you remove the appearance, if not the reality, of an interested compensation to produce an acquittal. No reason has been assigned why a juror, a witness, a crier, or a clerk, should have double fees where an officer is a party and acquitted. It is a sufficient reason why they should not, that the statute does not give it. The argument which would convince that the attorney is entitled to double costs, must be equally cogent in case of the other officers.

It is said that the relation of attorney and client did not exist between these parties. This was an action of assumpsit for money had and received by the defendants for the use of the plaintiff. If they have received the money which belongs to the plaintiff, they are bound to refund it; and I apprehend it can make no difference whether they were or were not the attornies of McFarland. But they were the attornies of McFarland; he was an interested party, liable individually for any sum which might be recovered against him; the defendants have appeared upon the record as his attornies; they admitted themselves to act in that capacity when they received the money; and they cannot, therefore, now deny it. That McFarland had been indemnified could not deprive him of an official right; he had never parted with his interest in any way. If his security had failed, and a recovery had been had, he must have paid it; he was not therefore a mere nominal party. That Billings agreed to indemnify McFarland, cannot be considered as an abandonment of McFarland's rights; it was a commendable precaution, and perfectly justifiable; it was intended to add to, not detract from

his security, and cannot be used for a purpose different from that originally intended. To give to this transaction a different construction, would be making McFarland, by virtue of his official rights, indemnify Billings; directly denying the reason of Chief Justice Gibbs, in 5 *Taunton*, 820, where he says, that the double or treble costs are for the supposed oppression of the officer to whom they are allowed, and not for the expense of defending the action. Billings was not an officer, clothed with official authority; and to give him the costs, would be only upon the ground of the expenses of the action, and would also be allowing to him a sum which he might retain and put in his own pocket, and not account for to any one, which sum was allowed upon the ground of McFarland's oppression. So long as McFarland was a party upon the record, and so long as his liability continued, he was interested; he was oppressed by the suit, and all beyond single costs belongs to him.

I am therefore of opinion that the judgment of the supreme court should be reversed.

On the question being put, *Shall the judgment of the supreme court be reversed?* the members voted as follows:

For *affirmance*—Senators ARMSTRONG, BEARDSLEY, BENTON, CONKLING, DEITZ, EATON, HUBBARD, MATHER, OLIVER, SHERMAN, and TALLMADGE—11.

For *reversal*—Senators BOUGHTON, REXFORD, TODD, WARREN, WHEELER, and WOODWARD—6.

Whereupon the judgment of the supreme court was *affirmed.*

On a subsequent day, a motion was made in behalf of the plaintiff in error, that the record be retained in this court until the plaintiff could have an opportunity to move for a reargument, on the ground that the cause had not been decided by *a major part* of the members of the court. It was argued, that as the court consisted of the president of the senate, the senators, the chancellor, and the judges of the su-

preme court, (*Constitution of the State, art.* 5, § 1, 1 *R. S.* 51,) being *thirty-seven* in number, or of *the major part* of them, *nineteen* members were necessary to constitute a quorum ; and that to pronounce an effective judgment, at least that number of members should take a part in the decision of a cause, although on *appeals* the chancellor had no voice in the final sentence, nor the judges in the supreme court in the affirmance or reversal of a judgment brought up by writ of error.   It was further insisted, that the provision in the revised statutes declaring that no decision can be made without the concurrence of at least *ten* members legally competent to vote on the question pending, 2 *R. S.* 164, § 2, supports the position that at least nineteen members should take part in the decision of a cause, *ten* being a majority of *nineteen*; and that until within a few years, it had always been conceded that there should be a majority of the whole court, not only to *hear*, but to *determine* a cause.

The CHANCELLOR was of opinion that the motion should be denied.   He considered the question as settled by the determinations of this court, upon similar applications in the cases of *Lansing* v. *Goelet* and *The People* v. *Lambert.*   Nineteen members, he observed, constituted a quorum of the court for the hearing of causes, and consequently it was competent to *ten* members, being a majority of *nineteen*, to decide a cause, provided that nineteen members were present when the decision was made ; that the decision of the ten who concurred would dispose of the case, although the remaining nine did not vote in the decision of the question, or even had not heard the argument of the cause.   A different principle, he added, would lead to great embarrassment and delays in the administration of justice ; and he illustrated his observations by reference to the effect, which would be produced by its adoption upon the judgments of the courts of common pleas.   Those courts consist of five judges, and three form a quorum ; and unless the decision of two, a majority of the quorum, was held to be valid, many of the judgments of those courts would be erroneous.

ALBANY,
Dec. 1830.

Mr. Senator BENTON concurred with the chancellor that the question must be deemed as settled in this court, that a decision by ten members, affirming or reversing a judgment, is enough to enable this court to render an effective judgment, and that the maxim *stare decisis* must govern.

Mr. Senator TODD was of opinion that at least *nineteen* members of the court should hear and deliberate; *ten* may decide the case, but the *nine* others should participate in the examination, as by possibility the light in which a question might be presented by a member in the minority, might produce a change in the opinion of one in the majority, and thus lead to a very different result from what otherwise would have taken place.

The motion to stay the record in this court was denied.*

* During the present session, a *re-argument* was ordered in two causes, call_ ed up for decision, because there was not a concurrence of *ten members* in either case for an affirmance or reversal. In both cases the vote stood, for reversal *nine*, and for affirmance in one case *eight*, and in the other *five*.